IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL JERMAINE GRACE,               )
                                      )
                Plaintiff,            )
                                      )
        v.                            )               1:20CV755
                                      )
ALAMANCE COUNTY, et al.,              )
                                      )
                Defendants.           )


<u>RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE</u>


This is action is based on a *pro se* civil rights Complaint [Doc. #2] filed primarily under 42 U.S.C. § 1983 by Plaintiff Michael Jermaine Grace, a prisoner of the State of North Carolina. Plaintiff raises claims against Alamance County, North Carolina; the Graham Police Department; and three of the Department's officers, Officer Cross, Officer Z. Hulcher, and Detective C.T. Denny, based on events related to two separate arrests of Plaintiff. Plaintiff contends that the officers violated his rights under the United States Constitution, and "Human Rights; (1) Individual Civil Rights and (2) Rule of Law as well as NC Constitutional Rights." (Complaint, § II(B).) The Graham Police Department and its officers (hereinafter Police Defendants) filed a Motion for Summary Judgment [Doc. #30] and Defendant Alamance County filed a separate Motion for Summary Judgment [Doc. #33]. Plaintiff filed multiple documents with various labels in response to those motions including what was docketed as a Supplement [Doc. #36] to the Complaint, Interrogatories [Doc. #37] and a 2nd Plaintiff Response [Doc. #42]. The Police Defendants then filed a Reply [Doc. #44], which

led to a further Supplement [Doc. #44] by Plaintiff. After the Court ordered further briefing on one aspect of the Police Defendants' Motion, the Police Defendants filed a Supplemental Brief [Doc. #52] with Plaintiff filing another Response [Doc. #54] and further Supplements [Doc. #56, #58, #59]. Defendants' Motions for Summary Judgment are now before the Court for rulings.

## I. Summary Judgment Standard

Summary judgment is appropriate when no genuine issue of material fact exists. A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in the light most favorable to the non-moving party. Id. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick Cnty. Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48). A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. See, e.g., Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); see also Anderson, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials).

Case 1:20-cv-00755-LCB-JEP   Document 61   Filed 01/16/24   Page 2 of 21

## II. Defendant Alamance County's Motion

The Complaint in this case lists the first Defendant as "Alamance County and Graham Police Department, et al," lists that Defendant's job title as "Alamance County District Courthouse," lists its employer as "Alamance County/Graham, N.C.," and gives an address in Graham, North Carolina. (Complaint, § I(B).) It also names the three Graham Police Officers as Defendants. Most of the factual allegations in the Complaint and its attachments pertain to the police officers and do not mention Alamance County. However, at times, it does reference such parties as "Alamance County District Courthouse officials" (id. § VI), the Alamance Courts (id. Attach.), or the "Alamance Co. District Court" (id.) and seeks to hold them liable for malicious prosecution or holding Plaintiff in detention and making him pay bond for offenses they allegedly knew he did not commit. From excerpts of Plaintiff's deposition attached to Alamance County's Brief supporting its Motion for Summary Judgment (Alamance Brief [Doc. #34], Ex. A), it is clear that Plaintiff intended to sue either the District Attorney's Office in Alamance County, its attorneys, or state court judges for failing to dismiss the charges against him. Plaintiff may also have intended to sue the Alamance County Sheriff for detaining him while the charges that Plaintiff claims were false were pending. (Id.)

Counties may be sued as parties under § 1983, but only to the extent that a policy or custom of the county leads to a violation of a plaintiff's federal constitutional rights. Buffington v. Baltimore County, 913 F.2d 113, 122 (4th Cir. 1990). Here, Plaintiff points to no harmful policy or custom of Alamance County, but instead raises allegations against judges, prosecutors, or the Alamance County Sheriff, none of whom are employed or controlled by Alamance County. To the extent Plaintiff seeks to sue state court judges or magistrates, those

3

persons are not employees of Alamance County, and even if Plaintiff had named them individually, he could not have stated a proper claim for relief since judges have absolute immunity for their judicial actions. Stump v. Sparkman, 435 U.S. 349 (1978). Similarly, Plaintiff may have meant to sue prosecutors, but those persons are also employees of the State of North Carolina, not Alamance County, see McNair v. Nash County, 4:12-CV-112-F, 2012 WL 2935249, at *2 (E.D.N.C. July 18, 2012) (unpublished), and they are also immune for actions taken in prosecuting Plaintiff's criminal cases, see Buckley v. Fitzsimmons, 509 U.S. 259 (1993). Finally, to the extent Plaintiff seeks to base his claims on the actions of the Alamance County Sheriff in holding him in the Alamance County Detention Center, the Sheriff, not the county, is responsible for the actions of the Sheriff and his deputies at the Detention Center. Cobbs ex rel. Cobbs v. County of Guilford, No. 1:10CV806, 2012 WL 3113141, at *2 (M.D.N.C. July 31, 2012) (unpublished), rec. adopted as modified, 2012 WL 4508106 (M.D.N.C. Sept. 28, 2012) (unpublished). Moreover, Plaintiff cannot sue the Sheriff for keeping him in custody pursuant to a facially valid warrant or order for his detention. See Baker v. McCollan, 443 U.S. 137, 143-44 (1979) (holding that arrest and detention based on facially valid warrant does not violate the Constitution). Although Plaintiff certainly contests whether charges should have been brought or maintained against him, the Sheriff had no alleged involvement in investigating, bringing, or maintaining those charges and Plaintiff does not contend that orders for his detention were not in place at all times while he was held in the Detention Center. He also fails to make any allegations or point to any evidence to show that the orders were not facially valid so that the Sheriff was not justified in holding him.

4

In the end, Plaintiff provides no support for a claim against Alamance County or any of its employees. In fact, it appears that he intended to sue only persons not employed by the County. However, he failed to properly name or serve any of those parties and, if he sought to amend his Complaint to do so now, those claims would fail for the reasons just set out. Defendant Alamance County's Motion for Summary Judgment should be granted.

### III. Police Defendants' Motion

#### A. Facts

As to the first arrest challenged by Plaintiff, Plaintiff's Attachments [Doc. #2-1] to his Complaint allege that on May 18, 2017, Plaintiff was cooking when he heard a loud commotion in the parking lot of his apartment complex and opened his door to investigate. (Complaint, Attach. at 19.) He saw two neighbors about to fight while other neighbors tried to break up the fight. (Id.) At that time, Graham police officers arrived and two of them approached Plaintiff, had him step out of his doorway, and searched and questioned him. (Id.) The officers left to deal with other persons but then three officers returned, including Defendant Hulcher, and told Plaintiff that their sergeant had told them to arrest Plaintiff for carrying a concealed weapon. (Id.) Plaintiff maintains that he had only a small knife and fork in his hand and was not carrying any concealed weapon. (Id.) According to a Declaration (Police Defendant's Motion, Ex. 2) submitted by Defendant Hulcher, he arrested Plaintiff for carrying a concealed weapon on the date alleged because Plaintiff was discovered possessing a fixed blade knife in his rear pants pocket following a verbal altercation with at least two other persons. Plaintiff was arrested and released by the state magistrate on a promise to appear. (Complaint, Attach. at 19.) That charge was later dismissed by a prosecutor as part of a plea

5

deal entered into by Plaintiff regarding separate charges. (Police Defendant's Motion; Complaint, Attach. at 2.)[1] In Plaintiff's deposition, he stated that he did have a small, fixed-blade paring knife in his hand along with a fork at the time he opened the door and stood in the doorway of his apartment. (Police Defendant's Supp., Ex. A. at Dep. p. 41.) He also stated that there was a knife in his pocket, but described it as a "pocket knife" of "only four fingers" in size. (Id. at 43.)

As to the second arrest, Plaintiff alleges in the Exhibits to his Complaint that in October of 2017, he was in a verbal altercation with three men who were trying to fight him, that Defendant Cross responded to the incident, that Cross sided with the three men, and that Plaintiff pointed out to him that he was wrong to do so. (Complaint, Attach. at 28.) About a month later, on November 9, 2017, Plaintiff's fiancée, Teerra Ragland, was taken to the hospital in a neighboring county to have their baby. (Id.) Plaintiff joined her and stayed in the hospital with her. (Id.) On November 11, 2017, Ragland received a call from her neighbor saying that someone had broken into her apartment. (Id.) As she and Plaintiff left the hospital, Ragland called 911 to inform authorities of the break-in. (Id.) While Plaintiff and Ragland were still en route, she called the neighbor again and he told her that police, specifically Defendant Cross, were at the apartment. (Id.) Ragland took the call on speaker phone. (Id. at 29.) After Plaintiff informed her that Cross was the officer with whom he had the earlier dispute, she asked the neighbor to let her speak to Defendant Cross and asked him to wait until she got there to enter the apartment. (Id. at 28-29.) Defendant Cross allegedly asked if

_____

[1] According to state records, Plaintiff was convicted on February 21, 2019 of DWI pursuant to a plea, and the unrelated charge of carrying a concealed weapon was voluntarily dismissed that day "per plea."

she had something to hide and she replied that she should be there because she would be the one to know what was missing. (Id. at 29.) He allegedly responded by asking whether Plaintiff had anything to do with the burglary. (Id.) Plaintiff then cursed at and argued with Defendant Cross. (Id.) Defendant Cross allegedly returned the phone to the neighbor and went into Ragland's apartment. (Id.) Plaintiff claims that he did so to rummage through the contents of the apartment, take pictures, and see if he could find something to use for charges against Plaintiff in retaliation for their argument. (Id.) This included a picture of what Plaintiff alleges was a "toy BB gun holster" belonging to Petitioner's stepson. (Id.)

On November 29, 2017, Graham police officers stopped Plaintiff at gunpoint as he left Ragland's apartment complex. (Id. at 30.) They arrested him for possession of a firearm by a felon. (Id.) Plaintiff was taken to jail and held for two weeks until his release on bond. (Id.) Plaintiff alleges that Defendant Cross never filed a police report concerning the November 9 burglary and that Defendant Cross took a three-bladed knife belonging to Plaintiff from underneath a pillow in the apartment on November 9. (Id. at 32.) Defendant Denny, who Plaintiff contends was never at the scene of the burglary, did complete a report of the November 9 burglary, listing Plaintiff as one of the victims and stating that a semiautomatic handgun, a knife, and two video game consoles were stolen. (Id. at 11.) Defendant Denny also procured an arrest warrant charging Plaintiff with possessing a black semiautomatic handgun on the date of the burglary. (Id. at 10.)

As to this incident, the Police Defendants submit the Declarations of Defendants Cross and Denny (Police Defendants' Motion, Exs. 3, 4.) Defendant Cross states that on November 9, he responded to a report of a burglary at Ragland's apartment and saw that entry appeared

7

to have been made through a smashed window. (Police Defendants' Motion, Ex. 3, ¶ 2.) He and other officers entered to determine whether the intruder was still there and check on the welfare of any occupants. (Id.) In a bedroom, he saw a mattress that had been moved aside, next to which was an empty holster "of the kind used to carry a semi-automatic handgun." (Id.) Police then spoke via telephone to Ragland who asked that they not re-enter the house. (Id. ¶ 3.) At that point Defendant Cross left, but returned later to take a report from Ragland. (Id. ¶ 4.) He states that Ragland reported the theft of Playstations from the bedroom, and then during a "one-on-one" conversation with Ragland, he asked about the holster next to the mattress and "[a]fter some hesitation" she told him that it belonged to Plaintiff, that Plaintiff used it to hold a black semi-automatic handgun that he kept for protection, that it was missing, and that it was possibly a 9mm caliber which resembled guns "carried by the police." (Id.) Defendant Cross then prepared a report setting out these facts but did not further participate in the investigation. (Id. ¶ 5.)

In his Declaration, Defendant Denny states that he reviewed a report of the burglary at Ragland's home and saw in the report that Ragland told police that the holster belonged to Plaintiff and that he used it to store a semi-automatic handgun that was missing. (Police Defendants' Motion, Ex. 3, ¶ 2.) Upon learning that Plaintiff was a convicted felon, with prior convictions for possession of a firearm by a felon and multiple assaults, Denny prepared a warrant charging Plaintiff with being a felon in possession of a firearm and presented it to a North Carolina Magistrate who issued the warrant. (Id. ¶¶ 3, 4.) Defendant Denny later

learned that Plaintiff was arrested, but played no further part in the case. (Id. ¶ 5.) The charge was later dismissed when Plaintiff pled guilty to a separate set of charges. (Id. ¶ 6.)[2]

## B. Discussion

Based on the allegations set out above, Plaintiff raises claims against Officers Hulcher, Denny, and Cross and the Graham Police Department. Certain of these claims clearly fail and can be disposed of quickly before addressing the remaining claims. Specifically, Plaintiff attempts to raise claims based on what he terms Human Rights, Individual Civil Rights, and the Rule of Law. These are not cognizable causes of action and Plaintiff cannot pursue such claims or recover based upon them. Therefore, Defendants should be granted summary judgment on those claims.

Plaintiff also lists causes of action under the North Carolina Constitution. However, there is no direct cause of action under the North Carolina Constitution against individual defendants acting in their individual capacities. Corum v. Univ. of N.C., 330 N.C. 761, 787-88, 413 S.E.2d 276, 292-93 (1992); see also Love-Lane v. Martin, 355 F.3d 766, 789 (4th Cir. 2004). Such claims can only be brought against officials acting in their official capacities. Corum, 330 N.C. at 788, 413 S.E.2d at 293. Therefore, any individual capacity claims brought directly under the North Carolina Constitution fail and Defendants are entitled to summary

---

[2] According to state records, Plaintiff was convicted on January 28, 2019 of larceny and credit card theft pursuant to a plea agreement, and state records reflect that the unrelated charge of felon in possession of a firearm was voluntarily dismissed that day pursuant to the plea agreement, as further reflected in the transcript of that proceeding. State records also reflect that Plaintiff was convicted on March 14, 2019 of two counts of Assault on a Law Enforcement Officer with physical injury and two counts of Habitual Felon, for offenses on February 4, 2019 when he reported to court but, according to the transcript, resisted being taken into custody and sprayed courtroom deputies with mace, with the sentences running consecutively and a projected release date of July 29, 2027. Petitioner has filed Habeas Petitions under 28 U.S.C. § 2254 as to these convictions, and those Petitions are proceeding separately.

9

judgment on those claims.  Although Plaintiff could theoretically bring official capacity claims based on violations of the North Carolina Constitution, he can do so only where no other remedy exists under state law to remedy the alleged violation.  Love-Lane, 355 F.3d at 789. Causes of action exist in North Carolina for false imprisonment and malicious prosecution. See Barnett v. Karpinos, 119 N.C. App. 719, 728, 460 S.E.2d 208, 213 (1995) (false imprisonment); Fox v. City of Greensboro, 279 N.C. App. 301, 316, 866 S.E.2d 270, 284 (2021) (malicious prosecution).  Therefore, Plaintiff cannot pursue any claims under the North Carolina Constitution in this case and the Police Defendants are entitled to summary judgment on those claims.  Love-Lane, 355 F.3d at 789.

Finally, Plaintiff names the Graham Police Department as a Defendant.  The Police Defendants maintain that the Department is not an entity which can be sued.  Such a determination is made using the laws of the state where this Court is located.  See Fed. R. Civ. P. 17(b)(3).  Under North Carolina law, a police department is merely a component part of a municipality and not a separate entity that can sue or be sued.  If the Court instead treated the Complaint as raising claims against the City of Graham, those claims would also fail because,

> "[a] municipality cannot be held liable *solely* because it employs a tortfeasor— or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  Monell v. Department of Soc. Servs., 436 U.S. 658, 691 (1978) (emphasis in original). "Only in cases where the municipality causes the deprivation 'through an official policy or custom' will liability attach." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)). "Because section 1983 was not designed to impose municipal liability under the doctrine of respondeat superior, the 'official policy' requirement was 'intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby to make clear that municipal liability is limited to action for which the municipality is actually responsible.'" Riddick v. School Bd. of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986)). "To state a cause of action against a municipality, a section 1983 plaintiff must plead (1) the

10

existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." Pettiford v. City of Greensboro, 556 F.Supp.2d 512, 530 (M.D.N.C. 2008).

Roseboro v. Winston-Salem/Forsyth Cnty. Sch. Bd. of Educ., No. 1:14CV455 2014 WL 5304981, at *4 (M.D.N.C. Oct. 15, 2014) (footnote omitted), recommendation adopted, No. 1:14CV455 (M.D.N.C. Dec. 9, 2014). Here, Plaintiff does not plead the existence of any policy or practice fairly attributable to the Graham Police Department or the City of Graham which proximately caused an alleged deprivation of his constitutional rights. He makes allegations at times that the Police Department has engaged in racially discriminatory conduct in other instances and, because he can think of no other reason why Defendants would prosecute him, he concludes that the charges must be racially motivated. However, these are conclusory allegations for which Plaintiff does not supply proof. For this reason, the Complaint fails to state any official capacity claim regarding the Police Defendants and fails to state any claim against the City of Graham. The Graham Police Department/City of Graham is entitled to summary judgment in its favor.

Remaining for discussion are Plaintiff's claims raised against Defendants Hulcher, Cross, and Denny in their individual capacities under § 1983 based on alleged violations of Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. The Complaint contains claims under the Fourth Amendment based on allegations of false arrest/imprisonment and/or malicious prosecution, discussed further below. However, the remaining claims based on the Fifth, Eighth, and Fourteenth Amendments fail on their face.

The Fifth Amendment protects against prosecution without an indictment, double jeopardy, self-incrimination, deprivation of life, liberty, or property without due process, or

11

the taking of private property for public use without compensation. The only one of these that could conceivably apply in the instant case would be the right to due process, but Plaintiff does not identify any process to which he was due, but did not receive. Therefore, he does not state a claim under the Fifth Amendment.

Similarly, the Eighth Amendment prohibits excessive bail, excessive fines, and cruel and unusual punishments. Plaintiff claims that he was arrested for crimes he did not commit and jailed for two weeks for the felon in possession arrest until he posted a bond of $25,000. (Complaint, Attach at 27.) However, he was never convicted, fined, or punished for the alleged crimes related to the arrests in this case and he alleges no facts to show that the amount of the bond was excessive given the seriousness of the charges or that Defendants had anything to do with setting the amount of the bond. Therefore, he also states no claim under the Eighth Amendment.

Finally, the Fourteenth Amendment contains a number of guarantees, but other than the incorporation of the Fourth Amendment claims discussed below, the only possible claim relates to a guarantee of equal protection under the law. Plaintiff does claim at times that he was denied equal protection or discriminated against because of his race. The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can

be justified under the requisite level of scrutiny." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Typically, equal protection claims involve allegations that the defendants "treated [a plaintiff] differently because he is a member of a suspect class or because he exercised a fundamental right." Renchenski v. Williams, 622 F.3d 315, 337 (3d Cir. 2010). As noted above, Plaintiff makes conclusory allegations that the defendant officers treated him as they did because of his race, but he sets out no facts supporting these allegations. He does not allege that they failed to arrest similarly-situated persons of another race, used racial slurs, or referred to his race during the events alleged in the Complaint. Rather his allegations are consistent with, at most, the existence of a minor personal dispute between himself and Defendant Cross due to an argument they had prior to the events that led to Plaintiff's felon in possession charge. These allegations do not support an equal protection claim based on racial discrimination. Summary judgment should be granted in Defendants' favor as to Plaintiff's claims under the Fifth, Eighth, and Fourteenth Amendments, with only his Fourth Amendment claims against Defendants Hulcher, Cross, and Denny remaining for discussion.

Claims of false arrest, false imprisonment, and malicious prosecution constitute common law torts, the elements of which are used to guide claims under § 1983 based on the Fourth Amendment to the United States Constitution. Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000); Manuel v. City of Joliet, 580 U.S. 357, 370 (2017).

> To establish a § 1983 claim based on a Fourth Amendment violation for false arrest, [Plaintiff] must show that he was seized by [Defendant] without probable cause. See Massey v. Ojaniit, 759 F.3d 343, 356 (4th Cir. 2014). . . .
>
> . . . An officer has probable cause to justify an arrest when "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." Michigan v. DeFillippo,

13

443 U.S. 31, 37, 99 S. Ct. 2627, 61 L.Ed.2d 343 (1979). Probable cause requires more than a "bare suspicion" but less than the evidence necessary to convict. Gray, 137 F.3d at 769. "It is an objective standard of probability that reasonable and prudent persons apply in everyday life." Id.

. . . .

. . . "A malicious prosecution claim under § 1983," like a false arrest claim, "is properly understood as a Fourth Amendment claim for unreasonable seizure." Evans, 703 F.3d at 647. The difference is that malicious prosecution covers unconstitutional seizures supported by legal process: "arrest[s] made pursuant to a warrant" and detentions during "the period after legal process issued—e.g., post-indictment or arraignment." Humbert v. Mayor & City Council of Baltimore City, 866 F.3d 546, 555 (4th Cir. 2017). To succeed on his malicious prosecution claim, [Plaintiff] must show that [Defendant] "(1) caused (2) a seizure of [Plaintiff] pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [Plaintiff's] favor." Id.

. . . .

. . . Warrants and indictments usually "conclusively determine[ ] the existence of probable cause," but not when an officer "deliberately supplied misleading information that influenced the [judge's or grand jury's] decision." Durham v. Horner, 690 F.3d 183, 189 (4th Cir. 2012).

English v. Clarke, __ F.4th __, 2024 WL 58384 at *5-7 (4th Cir. Jan. 5, 2024); see also Miller v. Prince George's County, 475 F.3d 621, 627 (4th Cir. 2007). "[A] Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction." Thompson v. Clark, 596 U.S. 36, 49 (2022).[1]

---

[1] The Police Defendants argued in their initial brief that Plaintiff could not meet the favorable termination element because the law required a termination that indicates a plaintiff's innocence, which Plaintiff's plea bargains did not. This was the law in the Fourth Circuit at the time. See Salley v. Myers, 971 F.3d 308, 313 (4th Cir. 2020). However, following briefing in this case, the United States Supreme Court held in Thompson that a more expansive definition of favorable termination applied. This Court ordered rebriefing on the favorable termination argument following Thompson. The facts in Thompson involved charges that were

14

Here, the undisputed facts show that Defendant Hulcher initiated a warrantless arrest of Plaintiff for carrying a concealed knife on May 18, 2017. This claim is analyzed as one based on the common law tort of false arrest. Defendant Hulcher contests the merits of this claim, but also raises a statute of limitations defense. The statute of limitations in this case is three years. See Wilson v. Garcia, 471 U.S. 261, 276-80 (1985) (holding that, in section 1983 actions, state statute of limitations for personal injury applies); Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996) (applying North Carolina's three-year statute of limitations for personal injuries to section 1983 actions); N.C. Gen. Stat. § 1-52(16) (establishing three-year statute of limitations for personal injury); see also Wallace v. Kato, 549 U.S. 384, 397 (2007) (holding that the statute of limitations begins to run on claims for false arrest/false imprisonment when the alleged false imprisonment ends, either by release or by initiation of legal process). With respect to the May 2017 arrest, Plaintiff knew of all the facts related to his arrest at the time it occurred in May of 2017, and he was released that day. However, he did not sign the current Complaint until August 15, 2020, or more than three years and three months later. The Court received it on August 19, 2020. Because Plaintiff filed the Complaint more than three years after the accrual of his false arrest claim against Defendant Hulcher, that claim is barred by the statute of limitations.[2] The statute of

_____

simply dismissed by a prosecutor without explanation, rather than charges dismissed as part of plea bargains as happened in the instant case. See Thompson, 596 U.S. at 40. In rebriefing, the Police Defendants did not address whether or not the broader favorable termination rule in Thompson extends to charges dismissed as part of plea agreements. Because Plaintiff's malicious prosecution claims can be decided on other grounds, the Court need not decide that issue in this case.

[2] Plaintiff filed an earlier Complaint in April of 2020 in case 1:20CV313 which was dismissed without prejudice based on certain deficiencies. However, that Complaint named only the Graham Police Department and Defendants Cross and Denny based on Plaintiff's arrest in November of 2017. It did not allege any claim

limitations would also bar any state law claim of false imprisonment against Defendant Hulcher to the extent that the Complaint could be read to allege one. See N.C. Gen. Stat. § 1-52(19). As for any claim under § 1983 analogous to malicious prosecution against Defendant Hulcher, Plaintiff does not allege, and the record does not reflect, any prosecution by Defendant Hulcher or any further seizure. Therefore, Defendant Hulcher is entitled to summary judgment and dismissal of the case against him.[3]

Plaintiff's remaining claims are against Defendants Cross and Denny for the events leading to his arrest in November of 2017. That arrest occurred pursuant to a warrant procured by Defendant Denny based on information provided to him by Defendant Cross. Therefore, this claim is one analogous to malicious prosecution. However, Plaintiff has not pointed to evidence that Defendant Denny procured the warrant in bad faith or that the warrant was facially invalid. There is nothing obviously facially invalid about the warrant attached to the Complaint. Further, Defendant Denny procured it based on statements or a report that he received from Defendant Cross. Plaintiff alleges that the information from Defendant Cross was false. However, he points to no evidence, as opposed to unsupported allegations or mere supposition, that Defendant Denny knew or should have known that these statements were false when he procured the warrant. Plaintiff argues at times that Defendant Denny failed to independently investigate the information he obtained from Defendant Cross.

---

against Defendant Hulcher or mention the arrest in May of 2017. Therefore, it cannot affect the running of the statute of limitations on claims related to that arrest.

[3] It is not entirely clear from the Complaint whether Plaintiff also alleges a Fourth Amendment search and seizure claim against Defendant Hulcher. However, to any extent he did, that claim is also barred by the statute of limitations as Plaintiff would have been aware of the facts supporting it at the time it occurred in May of 2017.

16

However, he points to no constitutional authority requiring an officer to reinvestigate information provided to him by another officer. Further, allegations of a negligent or innocent mistake by a police officer would not establish a constitutional violation. Miller, 475 F.3d at 627-28. This would also defeat any state law malicious prosecution claim, which requires proof of malice. Fox, 279 N.C. App. at 316, 866 S.E.2d at 285.

Defendant Denny further raises a defense of qualified immunity which shields government officials from liability for their conduct, provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). If the Court determines that the conduct violated plaintiff's constitutional rights, then the Court must determine whether the right was "clearly established" at the time of the violation. A law is clearly established "when the law has been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the State." Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998) (internal quotation omitted). As just stated, Defendant Denny's conduct in choosing not to further investigate the information he received from Defendant Cross did not violate Plaintiff's rights. However, even if a violation could somehow be shown, it was certainly not clearly established so that a reasonable officer in Defendant Denny's position would have known this. Defendant Denny is entitled to summary judgment and should be dismissed from the case.

Officer Cross is the only remaining Defendant. Plaintiff alleges a malicious prosecution claim as to Defendant Cross and may also be asserting a claim that Defendant Cross illegally entered and searched Ragland's apartment. Turning first to the potential search and seizure

17

claim, any such claim fails because Plaintiff expressly disavows that he lived in or leased the apartment. Instead, he specifically states that he lived at a separate residence ten blocks away. (Complaint, Attach. at 25, 30.) He supports that assertion with a lease in his name for the alternate residence and writes at the top of that lease "[m]y home where I stayed at the time." (Id. at 13.) Plaintiff was also not present during the alleged search and he sets out no facts claiming any legal or possessory interest in Ragland's apartment that would give him a reasonable expectation of privacy and standing to assert a Fourth Amendment claim based on a search of the apartment. See Rakas v. Illinois, 439 U.S. 128, 143 (1978). Further, Plaintiff cannot assert any claim on Ragland's behalf. "Fourth Amendment rights are personal rights which . . . *may not be vicariously asserted*." United States v. Bullard, 645 F.3d 237, 242 (4th Cir. 2011) (quoting United States v. Quinn, 475 U.S. 791, 794 (1986)). Defendant Cross is entitled to summary judgment on any Fourth Amendment claim by Plaintiff related to the entry into Ragland's apartment.

As for Plaintiff's malicious prosecution claim, Plaintiff contends that Defendant Cross used a picture of a holster for a BB pistol along with an alleged statement from Ragland that Plaintiff owned a semiautomatic handgun that was missing following the burglary of her apartment to prosecute Plaintiff. Defendant Cross argues that he only prepared a report and did not procure the warrant for Plaintiff's arrest, arrest Plaintiff, or otherwise participate in Plaintiff's prosecution after completing his report on the burglary. He cites the case of Skousen v. Brighton High Sch., 305 F.3d 520, 529 (6th Cir. 2002), in which the officer was accused of knowingly filing a false report or providing false testimony, but the plaintiff failed to introduce proof of such, which meant that the officer could not be held liable for later uses

18

of the report, which was accurate as far as he knew.  Id. at 528-29.  Plaintiff in the present action alleges that Defendant Cross intentionally falsified his report by taking a photograph of the holster for a BB gun and by falsely claiming that Ragland told him that the holster belonged to a semiautomatic handgun that Plaintiff kept for protection.  The question then is whether Plaintiff has produced sufficient evidence to proceed with a claim that Defendant Cross falsified the report used to procure Plaintiff's arrest.  Massey v. Ojaniit, 759 F.3d 343, 357 (4th Cir. 2014).

As stated above, Plaintiff contends that Defendant Cross's report was false and misleading because it says that Ragland said the holster in her apartment formerly held a gun belonging to Plaintiff.  Defendant Cross has submitted as evidence his sworn declaration that Ragland indeed told him exactly that in a one-on-one conversation.  (Cross Dec. ¶ 4.) Specifically, he states that he initially investigated the burglary at Ragland's apartment, left, and then returned when she was present to take a crime report.  (Id.)  "Upon arrival [he] met Ragland who reported the theft of three Playstations from the bedroom.  During [his] one-on-one conversation with Ragland [he] asked her about the empty holster next to the mattress. After some hesitation, Ragland told [him] it belonged to her boyfriend, Michael Grace, that he used it to hold a black semi-automatic handgun he kept 'for protection'--which was now missing--and that it was possibly a 9mm and resembled the handguns carried by police."  (Id.) In response, Plaintiff makes many accusations, but submits no sworn evidence on this point. Notably, there are no statements by Ragland disputing Defendant Cross's account.   In addition, Plaintiff's sworn deposition on this point is in the record.  (Police Defendants' Reply, Ex 1.)  In his deposition, Plaintiff testified that Defendant Cross was at the apartment after

19

Plaintiff and Ragland returned from the hospital. Cross did not talk to him beyond asking his name and age. Instead, Plaintiff testified that Defendant Cross took Ragland "over to the side" and "she told him what was missing and everything like that, I assume, because I wasn't actually in earshot of the conversation. I was pretty much trying to console the baby." (Id.) Counsel for Defendants then stated, "[w]hatever [Ragland] and Officer Cross discussed that day, the two of them, you weren't able to hear it." (Id.) Plaintiff responded, "I wasn't able to hear--let's see, she was talking to him about the hospital thing, but I did hear when they started talking about what was missing. She told him the two Playstations is missing and some games is missing. She never mentioned about no gun, I remember that part. That was it. After that he said something about he would be in touch, got in his patrol car and he left." (Id.) There is no further evidence in the record concerning the conversation between Defendant Cross and Ragland.

In relevant part, the two statements set out above agree. Officer Cross did return to Ragland's apartment and speak with her about the burglary and missing items. He also spoke to her, rather than Plaintiff, who was not a direct party to the conversation. In looking at Plaintiff's testimony, he claims that he heard part of the conversation, but also admits that he was out of earshot for at least part of it and that he was also trying to console a crying baby during the conversation. This is not inconsistent with Defendant Cross's statement that Ragland told him about Plaintiff's missing firearm in a one-on-one conversation after some hesitancy. At the very least, Plaintiff's deposition testimony does not serve as evidence sufficient to refute that the conversation regarding the gun occurred as Defendant Cross claims. Because Plaintiff did not hear the entire conversation, he has no basis upon which to

dispute that it occurred as Defendant Cross claims or to show that Defendant Cross's statement in his report to Defendant Denny was knowingly false so as to violate Plaintiff's constitutional rights. Any state law claim fails for the same reasons. Defendant Cross's Motion for Summary Judgment should also be granted and this action should be dismissed in its entirety.

IT IS THEREFORE RECOMMENDED that Defendant Alamance County's Motion for Summary Judgment [Doc. #33] be granted, that Defendants Hulcher, Cross, Denny, and the Graham Police Department's Motion for Summary Judgment [Doc. #30] be granted, and that this action be dismissed.

This, the 16th day of January, 2024.

_____/s/ Joi Elizabeth Peake_____
United States Magistrate Judge